# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ASHLEY GLYNN BRANCH,

      Plaintiff

v.

WASHOE COUNTY SHERIFF'S
DEPARTMENT, SONIA L. BUTLER,

      Defendants

Case No.: 3:22-cv-00361-MMD-CSD

**Order**

Re: ECF Nos. 1, 1-1

Plaintiff, who is in the custody of the Washoe County Detention Facility (WCDF), has filed an application to proceed in forma pauperis (IFP) (ECF No. 1) and pro se complaint (ECF No. 1-1).

## I. IFP APPLICATION

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981)

(quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

An inmate submitting an application to proceed IFP must also "submit a certificate from the institution certifying the amount of funds currently held in the applicant's trust account at the institution and the net deposits in the applicant's account for the six months prior to the date of submission of the application." LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been at the institution for less than six months, "the certificate must show the account's activity for this shortened period." LSR 1-2.

If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an initial partial filing fee that is calculated as 20 percent of the greater of the average monthly deposits or the average monthly balance for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid, the prisoner is required to make monthly payments equal to 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency that has custody of the prisoner will forward payments from the prisoner's account to the court clerk each time the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

Plaintiff's certified account statement indicates that the average monthly balance for the last six months was $17.69, and the average monthly deposits were $31.71.

Plaintiff's application to proceed IFP is granted. Plaintiff is required to pay an initial partial filing fee in the amount of $6.34 (20 percent of $31.71). Thereafter, whenever the prison account exceeds $10, he must make monthly payments in the amount of 20 percent of the preceding month's income credited to the account until the $350 filing fee is paid.

2

**II. SCREENING**

**A. Standard**

"[T]he court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. As such, when reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading

3

must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

Plaintiff's complaint names the Washoe County Sheriff's Department and Deputy Sonia Butler. Plaintiff alleges that he was arrested by Butler on July 19, 2021, for unlawful occupancy of a residence. Butler caused Plaintiff's truck and trailer (and the belongings in them) to be towed even though Plaintiff explained multiple times that he had someone a couple of blocks away that could come and take custody of the property within a few minutes. Plaintiff was told that his items were being stored by the Sheriff for safe keeping. Plaintiff was informed after transport to the jail that a vehicle inventory was conducted without Plaintiff's consent and outside of his presence.

Plaintiff was initially released on August 9, 2021, and contacted the Sheriff's Department and was told that D&S Towing had Plaintiff's property. Plaintiff contacted D&S Towing and was told that the truck had been sold and they never had Plaintiff's trailer or personal belongings. Plaintiff was told the Sheriff was holding his property. Plaintiff sent a kite and grievance to Butler inquiring about his property. He received a response that per Butler, Plaintiff was arrested on July 19, 2021, and Plaintiff's truck, trailer, and belongings were towed. The response went on

to state that Plaintiff bailed out on August 9, 2021, and apparently did not take action to recover the property. Plaintiff was advised it was his responsibility to pay the impound fees and recover the property. Plaintiff appealed, but got no response. Plaintiff asserts that the unlawful seizure violates the Fourth Amendment and Plaintiff was deprived of due process under the Fourteenth Amendment because the inventory was conducted outside Plaintiff's presence and without his consent.

"The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). Under the community caretaking exception, "police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic." *Id*. at 864 (internal quotation marks and citation omitted). "Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." *Id*. (citing *United States v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005) ("Once the arrest was made, the doctrine allowed law enforcement officers to seize and remove any vehicle which may impede traffic, threaten public safety, or be subject to vandalism."); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477, n. 4 (9th Cir. 1993) (impoundment of arrestee's car from private parking lot "to protect the car from vandalism or theft" was reasonable under the community caretaking function)). "A driver's arrest … is not relevant except insofar as it affects the driver's ability to remove the vehicle from a location at which it jeopardizes the public safety or is at risk of loss." *Id*.[1]

---

[1] This is contrasted by the situation where the vehicle is seized as evidence.

An impoundment of property may be proper under the community caretaking doctrine if, for example, the violation at issue "prevents the driver from lawfully operating the vehicle, and also if it is necessary to remove the vehicle from an exposed or public location." *Id*. at 865 (citations omitted). "On the other hand, a decision to impound a vehicle that is not consistent with the police's role as 'caretaker' of the streets may be unreasonable." *Id*. *Miranda* noted a Seventh Circuit case finding that "impoundment based solely on an arrestee's status as a driver, owner, or passenger is irrational and inconsistent with 'caretaking' functions." *Id*. Thus, towing a vehicle any time an arrestee is taken to jail, regardless of "whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets." *Id*. (citing *United States v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996)). The Ninth Circuit explained that "an officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers." *Id*. at 866 (citation omitted).

"Once a vehicle has been legally impounded, the police may conduct an inventory search, as long as it conforms to the standard procedures of the local police department." *U.S. v. Cervantes,* 703 F.3d 1135, 1141 (2012) (citations omitted). "However, an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Id*. (quotation marks and citation omitted).

In *Miranda*, the plaintiffs also asserted a Fourteenth Amendment due process claim. The Ninth Circuit indicated that they may have due process claim to a pre-deprivation hearing if there was not a legitimate caretaking basis for the impoundment. *Miranda,* 429 F.3d at 867-68. The court ultimately held there was no deprivation of due process resulting from the absence of a *post*-deprivation hearing, even assuming a pre-deprivation notice and hearing were not required,

1  because the plaintiffs were sent notice that they could contest the impoundment post-deprivation,

2  but no request was made. *Id*. at 868.

3          The court finds Plaintiff states a colorable claim under the Fourth Amendment against

4  Butler. Plaintiff alleges that Butler was advised Plaintiff could have the vehicle and trailer moved

5  within a matter of minutes, and therefore, includes sufficient averments to infer the caretaker

6  exception does not apply, and the subsequent inventory search was unlawful. It may ultimately

7  turn out that the caretaker exception applies because of a risk of theft or vandalism, but the

8  factual allegations are sufficient at this point for Plaintiff to proceed against Butler. Since there is

9  a question as to whether the impoundment was reasonable, the court will also allow Plaintiff to

10  proceed with his due process claim that he was entitled to some type of notice and/or a hearing in

11  connection with the inventory search.

12          Plaintiff does not, however, state a claim against the Washoe County Sheriff's

13  Department. Preliminarily, the correct defendant would be Washoe County, and not its agency.

14  Moreover, to impose liability on a municipality under section 1983, a plaintiff must prove:

15  (1) the plaintiff had a constitutional right of which he or she was deprived; (2) the municipality

16  had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional

17  right; and (4) the policy is the moving force behind the violation. *Gordon v. County of Orange*, 6

18  F.4th 961, 973 (9th Cir. 2021).

19          A plaintiff can satisfy this requirement in one of three ways. "First, a local government

20  may be held liable when it acts 'pursuant to an expressly adopted official policy.'" *Id*. (citations

21  omitted). "Second, a public entity may be held liable for a longstanding practice or custom." *Id*.

22  (quotation marks and citation omitted). "Such circumstances may arise when, for instance, the

23  public entity fail[s] to implement procedural safeguards to prevent constitutional violations or,

sometimes, when it fails to train its employees adequately." *Id*. (citations and quotation marks omitted, alteration original). *Id.* "Third, a local government may be held liable under [Section] 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id*. at 974 (citations and quotation marks omitted).

Plaintiff includes no allegations that Washoe County had a policy that was the moving force behind the alleged constitutional violations. The Washoe County Sheriff's Department will be dismissed, but with leave to amend to name the proper defendant and to assert sufficient factual allegations to assert a municipal claim.

## III. CONCLUSION

(1) Plaintiff's IFP application (ECF No. 1) is **GRANTED**; however, within **30 DAYS** Plaintiff must pay, through NDOC, an initial partial filing fee in the amount of $6.34. Thereafter, whenever the prison account exceeds $10, Plaintiff is required to make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the full $350 filing fee is paid. This is required even if the action is dismissed, or is otherwise unsuccessful. The Clerk must **SEND** a copy of this Order to the attention of **Chief of Inmate Services for the Washoe County Detention Facility,** 911 E. Parr Blvd., Reno, NV 89512.

(2) The Clerk shall **FILE** the Complaint (ECF No. 1-1).

(3) Plaintiff may **PROCEED** with the Fourth and Fourteenth Amendment claims against Butler; however, the Washoe County Sheriff's Department is **DISMISSED WITH LEAVE TO AMEND**.

(4) Plaintiff has **30 DAYS** from the date of this Order to file an amended complaint correcting the deficiencies noted above. The amended complaint must be complete in and of

itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff shall clearly title the amended pleading as "AMENDED COMPLAINT." If Plaintiff fails to file an amended complaint within the 30 days, the action will proceed on the original complaint only against Butler on the Fourth and Fourteenth Amendment claims. Alternatively, Plaintiff may advise the court within 30 days that Plaintiff only wishes to proceed against Butler.

**IT IS SO ORDERED**.

Dated: September 16, 2022

_____
Craig S. Denney
United States Magistrate Judge

9